No. 92-055

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992

IN RE THE MARRIAGE OF

MARGARET H. BOHARSKI,

     Respondent-Petitioner,

  and

GEORGE BOHARSKI,

     Appellant-Respondent.

**FILED**

FEB 22 1993

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:  District Court of the Eleventh Judicial District,
In and for the County of Flathead,
The Honorable Michael H. Keedy Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

    Martin J. Elison, Hardin, Montana

    For Respondent:

    James C. Bartlett, Hash O'Brien & Bartlett, Kalispell, Montana

Submitted on Briefs:  January 7, 1993

Decided:  February 22, 1993

Filed:

Clerk

Justice R. C. McDonough delivered the Opinion of the Court.

Appellant George Boharski appeals from the findings of fact, conclusions of law, and decree of dissolution of marriage entered by the District Court of the Eleventh Judicial District, Flathead County. We affirm.

Appellant presented five issues for review by this Court. One has been conceded as not properly before the Court. We frame the balance of the issues as follows:

1. Did the District Court err in its award of maintenance?

2. Did the District Court err in finding appellant in contempt of court and ordering his incarceration for 30 days.

George and Margaret Boharski were married on July 11, 1953. During the course of the marriage the parties had seven children, all of whom have now reached the age of majority. In the fall of 1987, George was diagnosed as being totally and permanently disabled. On October 10, 1989, Margaret filed a petition for dissolution of marriage.

On December 12, 1989, during a hearing on a conciliation request, the District Court Judge advised Margaret to have her attorney move the court for temporary maintenance. Margaret's counsel subsequently moved the court for an order awarding temporary maintenance. On March 29, 1990, the District Court ordered temporary maintenance in the amount of $400 per month, retroactive to October 29, 1989.

George maintained that all of his income was disability income which was exempt and he refused to pay the temporary maintenance. George's income consisted of monthly social security disability payments of $906, monthly workers' compensation benefits of $500.40, and monthly union pension disability payments of $363.50 at the time of final decree and slightly less at time of temporary order. George had no other sources of income.

Pursuant to a motion by Margaret, on September 19, 1990, the District Court found George in contempt of court for failing to make the temporary maintenance payments. The District Court ordered George jailed for 40 days, with 10 days suspended.

In this same order, the court also entered a Qualified Domestic Relations Order (QDRO) pursuant to the Retirement Equity Act of 1984, 29 U.S.C. § 10562(d)(3). A QDRO is a method of intercepting payments intended for one spouse and then directing these payments to the other spouse. A QDRO must be made pursuant to the existing state domestic relations laws. 29 U.S.C. § 1056. The QDRO in this case directed that George's union pension disability benefits be paid directly to Margaret.

Following George's release from jail, he discharged his attorney and made a request to disqualify the District Court Judge. This request was granted. A second District Court Judge assumed jurisdiction over this matter.

George then moved the District Court to terminate the previous temporary maintenance order. On October 15, 1991, the District Court denied this motion.

Trial in this matter began on December 12, 1991, and the court's final decree was entered on January 3, 1992. In the findings of fact in the decree of dissolution, the court found the net marital estate to be $12,116 annually, which is the annual value of the workers' compensation benefits ($7774), and the annual value of the union pension disability payments ($4362).

The District Court awarded all of the workers' compensation benefits to George. The District Court then awarded the union pension disability benefits to Margaret, with the QDRO to remain in place. Additionally, George was to pay to Margaret the sum of $298.33 per month for 36 months out of income received by him, as an equitable distribution of property and as maintenance. The time period of payment was made to coincide with her eligibility in the future for social security benefits. The court also found that George could make all payments and maintain his lifestyle and maintain his standard of living. George brought this appeal from the District Court's entry of the decree of dissolution contending that the District Court erred in determining maintenance.

I

Did the District Court err in its award of maintenance?

Upon reviewing a District Court's award of maintenance, this Court will not reverse the determination of the District Court

4

unless the findings of fact are clearly erroneous. In re Marriage of Eschenbacher (Mont. 1992), 831 P.2d 1353, 1355, 49 St. Rep. 393, 394. Upon reviewing conclusions of law relating to the maintenance award, this Court will simply determine whether the lower court's interpretation of the law was correct. Steer, Inc. v. Dep't of Revenue (1990), 245 Mont. 470, 474, 803 P.2d 601, 603.

George contends on appeal that the statutory criteria to be applied in determining maintenance awards found at § 40-4-203, MCA, were not satisfied in this case. George argues in the alternative that even if the criteria of § 40-4-203, MCA, were met, that maintenance was still improper in that all of his income was disability income, and therefore, exempt. George argues that the District Court erred in awarding maintenance when his only income was disability income.

It is clear from the record before this Court, and in particular from the findings of fact of the District Court, that the requirements of § 40-4-203, MCA, are satisfied in this case. Margaret is in need of and is entitled to maintenance.

However, the question before the Court is whether George's union disability income is available for maintenance purposes. The uncontroverted evidence at trial and throughout the entire record of this case is that George's income from his union pension is disability income. George testified that prior to reaching the age of 65 the only way an individual may obtain any of the monies in the pension fund is by demonstrating a disability. Absent a

5

disability there is no payment from the pension fund prior to age 65. George was 58 years old.

The District Court in this case did not make any factual determination that the payments George receives from the pension fund are not disability payments. However, the District Court ordered these funds be paid to Margaret as maintenance, together with the additional payment of $298.33 per month. The question before the Court is whether an award of maintenance may be ordered from the union disability income. This is a question of law.

Margaret argues that maintenance may be so ordered. Margaret relies on this Court's decision of In re Marriage of Cooper (1990), 243 Mont. 175, 793 P.2d 810. In Cooper, we stated that disability benefits may be included by the District Court in determining the value of the marital estate. Cooper, 793 P.2d at 812. However, in Cooper the disability benefits were not awarded to the other spouse, they were simply included in the marital estate. Disability benefits can be considered by the District Court in determining an equitable distribution of the marital estate. Unfortunately, in this situation there is no marital estate apart from the various disability payments.

George argues that pursuant to § 25-13-608, MCA, the disability payments are exempt and may not be awarded as maintenance. Section 25-13-608, MCA, provides in part that a judgment debtor's disability or illness benefits are exempt from execution. Margaret counters by arguing that "any reliance on §

25-13-608, MCA, to prevent the District Court from awarding the pension fund, whether it's retirement or disability income, to Margaret is misplaced." Margaret argues that § 25-13-608, MCA, is not applicable in this case.

In In re Marriage of Castor (1991), 249 Mont. 495, 817 P.2d 665, this Court referred to § 25-13-608, MCA. In Castor, the husband alleged that his wife had been awarded part of his disability payments. The wife contended that the payments were actually retirement payments and not disability benefits.

This Court began the discussion of this issue by noting that pursuant to § 25-13-608(1)(d), MCA, "[i]f the monthly benefits Mr. Castor is currently receiving qualify as 'disability' benefits, such payments are exempt . . . ." Castor, 817 P.2d at 668. In Castor, however, we held that the benefits in question were retirement benefits and could, therefore, be properly awarded to the wife. Deciding the question of whether disability benefits were exempt from maintenance payments under the exemption statute was not necessary and therefore can be considered dicta. The Court is not bound or required to give precedential value to dicta. See Montana Human Rights Division v. City of Billings (1982), 199 Mont. 434, 441, 649 P.2d 1283, 1287.

Are the union disability payments of a former spouse applicable to the payment of maintenance to the other former spouse?

7

The basis of maintenance is the natural obligation of a spouse to support the other spouse and children. A decree for maintenance therefore is not, strictly speaking, a debt in the strict legal sense of that term, but a judgment calling for the performance of a duty made specific by a decree of the court. See 24 Am.Jur.2d, Divorce and Separation § 531 (1983).

One of the purposes of an exemption from execution statute is to foster and assist in performance of that obligation so as to protect the family and home. The statutory exemption is for the protection of the family of the debtor as much as for the debtor. See Anaconda Fed. Credit Union # 4401 v. West (1971), 157 Mont. 175, 179-80, 483 P.2d 909, 912. It is in the interest of the state to protect the homes of its residents. In re Metcalf's Estate (1953), 93 Mont. 542, 19 P.2d 905.

The duty of the spouse to support separates court ordered support from a judgment debt so as to allow a violator to be imprisoned for contempt and not be contrary to the constitutional provision relative to imprisonment for debt. 16A Am.Jur.2d Constitutional Law § 622 (1979). George's obligation is not a debt and therefore he is not a "judgment debtor" granted the exemptions by § 25-13-608, MCA. The purpose of such exemption provision is to foster and enhance the support of a family by protecting money and assets from the grasp of outsiders and not to help one member of the family avoid such member's obligation to support the other. See In the Matter of M.H. v. J.H. (1978), 403 N.Y.S.2d 411, 415.

8

We conclude the union disability payments here in question are subject to meeting maintenance payments and are subject to a qualified domestic relations order in the enforcement thereof.

II

Did the District Court err in finding appellant in contempt of court and ordering his incarceration for 30 days?

Pursuant to § 3-1-523, MCA, contempt of court orders issued by a district court are final and usually unreviewable by this Court except by way of a writ of certiorari or review. However, an exception exists for contempt of court orders made in dissolution of marriage proceedings. In re Marriage of Sessions (1988), 231 Mont. 437, 441, 753 P.2d 1306, 1308; citing In re Marriage of Smith (1984), 212 Mont. 223, 225-26, 686 P.2d 912, 914. Therefore, the contempt of court order in this case is properly before the Court for review.

George argues that since the order directing him to make temporary maintenance payments was incorrect as a matter of law, the subsequent contempt of court order for failing to obey the temporary maintenance order was error. This Court has previously stated that "[t]here is no doubt that a party cannot be guilty of contempt of court for disobeying an order which the court had no authority to make." State ex rel. Enochs v. District Court (1942), 113 Mont. 227, 233, 123 P.2d 971, 974.

9

Maintenance not being a debt within the exemption statute, the District Court had the jurisdiction and authority to punish for contempt for failure to obey its maintenance order.

Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____

_____
Justices

10

Under § 25-13-608, MCA, although veterans' and social security benefits are subject to execution if they are levied for child support or spousal maintenance, "disability or illness benefits" are exempt. Section 25-13-608(1)(d), MCA. If the monthly benefits Mr. Castor is currently receiving qualify as "disability" benefits, such payments are exempt from execution.

Castor, 817 P.2d at 668. After determining that disability benefits were exempt, this Court in Castor held that the benefits in question were actually retirement benefits, and could, therefore, be awarded. The majority opinion states that in Castor "[d]eciding the question of whether disability benefits were exempt from maintenance payments under the exemption statute was not necessary and therefore can be considered dicta." To the contrary, in Castor it was essential that the issue of whether disability benefits were exempt be addressed, and we specifically held that disability benefits are exempt and may not be awarded as maintenance. The statement in Castor referred to in the majority opinion was not mere dicta, but went to the very heart of our analysis and decision. Our application and interpretation of § 25-13-608, MCA, in Castor was correct and should be followed in this case. Section 25-13-608, MCA, provides in its entirety that:

(1) A judgment debtor is entitled to exemption from execution of the following:

(a) professionally prescribed health aids for the judgment debtor or a dependent of the judgment debtor;

(b) benefits the judgment debtor has received or is entitled to receive under federal social security or local public assistance legislation, except as provided in subsection (2);

12

Justice William E. Hunt, Sr., dissenting.

I dissent. In reaching the holding announced today, the majority opinion disregards specific exemption provisions in two separate statutes as well as past precedent of this Court. Clearly, the application of the law in this situation leads to an unpleasant result in that there is no other marital property to award to Margaret, but it is clear that under Montana law the pension disability benefits, along with the workers' compensation benefits, are exempt from maintenance awards.

It is important to recognize that the net marital estate in this case is $12,116 annually. This amount is a combination of the annual value of George's workers' compensation benefits ($7774), and the annual value of his union pension disability benefits ($4362). Margaret was awarded all of the pension disability benefits, and was awarded an additional $298.33 per month, which by necessity must come from George's workers' compensation benefits.

The majority opinion, in determining that George's pension disability benefits were not exempt, held that the disability benefits exemption statute found at § 25-13-608, MCA, does not apply to maintenance awards. This conclusion is contrary to our prior decision in Castor. In Castor, the issue was whether one spouse's disability benefits could be awarded to the other spouse in a dissolution proceeding. In Castor, this Court correctly recognized that § 25-13-608, MCA, applied and stated that:

11

(c) veterans' benefits, except as provided in subsection (2);

(d) disability or illness benefits;

(e) benefits paid or payable for medical, surgical, or hospital care to the extent they are used or will be used to pay for the care;

(f) maintenance and child support; and

(g) a burial plot for the judgment debtor and his family.

(2) Veterans' and social security legislation benefits based upon remuneration for employment, as defined in 42 U.S.C. 662(f), are not exempt from execution if the **debt** for which execution is levied is for:

(a) child support; or

(b) maintenance to be paid to a spouse or former spouse if the spouse or former spouse is the custodial parent of a child for whom child support is owed or owing and the **judgment debtor** is the parent of the child. [Emphasis added.]

The majority opinion states that an award of maintenance is not a debt, George is not a judgment debtor, and therefore, the disability benefits exemption of § 25-13-608, MCA, does not apply. However, the very language of the statute explicitly provides that a maintenance award against a party is a "debt" and that the party owing the maintenance obligation is a "judgment debtor." The statute is clear and unambiguous, governs in this case, and should have been followed by the majority.

The statute provides several exceptions to the general rules of exemption. One exception is that certain veterans' and social security benefits are not exempt from execution for maintenance

13

awards under certain circumstances. The Legislature, while considering the wisdom of permitting certain exceptions, did not provide for an exception in relation to disability benefits and maintenance awards. It is well-settled that:

> In the construction of a statute, the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted.

Section 1-2-101, MCA. Additionally, it is a long-standing rule that when interpreting statutes "the intention of the legislature is to be pursued if possible." Section 1-2-102, MCA. The intention of the Legislature is manifest--disability benefits are exempt. Notwithstanding, the majority has created a new exception even though the Legislature chose not to do so.

The majority opinion, citing to 24 Am. Jur. 2d _Divorce and Separation_ § 531 (1983), refers to the common law basis for maintenance, i.e., the natural obligation of a spouse to support the other spouse. This same section goes on to state that in relation to enforcement of maintenance awards "the recipient spouse is generally considered a judgment creditor of the obligor spouse to the extent of being entitled to all remedies given by statute to such creditors." 24 Am. Jur. 2d _Divorce and Separation_ § 531 (1983). Likewise, the obligor spouse is a judgment debtor and is entitled to all protection provided by statute. The applicable Montana statute provides protection by exempting from execution all disability benefits of a judgment debtor. Even if the common law

14

regarding maintenance was contrary to § 25-13-608, MCA, the statute governs. Section 1-2-103, MCA, provides that:

> The rule of the common law that statutes in derogation thereof are to be strictly construed has no application to the statutes of the state of Montana. The statutes establish the law of this state respecting the subjects to which they relate . . . .

There may be policy arguments in favor of the new exception created by the majority opinion, but if additional exceptions are to be added to § 25-13-608, MCA, the Legislature is the appropriate body to create such new exceptions.

The majority opinion does not discuss the District Court's award to Margaret of $298.33 per month out of George's workers' compensation benefits. Section 39-71-743, MCA, provides in part that "[n]o payments under this chapter shall be assignable, subject to attachment or garnishment, or be held liable in any way for debts . . . ." The disability-type benefits George receives from his workers' compensation award are exempt and the majority opinion fails to even address this issue.

Finally, since the order directing George to make temporary maintenance payments out of his disability and workers' compensation benefits was incorrect as a matter of law, the subsequent contempt of court order for failing to obey the temporary maintenance order was error. A party cannot be guilty of contempt for disobeying an order which the court had no authority to make. State ex rel. Enochs v. District Court (1942), 113 Mont.

15

227, 123 P.2d 971; Phillips v. Loberg (1980), 186 Mont. 331, 607 P.2d 561.

I would reverse.

_____
Justice

Justice Terry N. Trieweiler concurs in the foregoing dissent.

_____
Justice

Justice Karla M. Gray concurs in the dissent of Justice Hunt.

_____
Justice

February 22, 1993

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:


MARTIN JOHN ELLISON
Attorney at Law
P.O. Box 414
Hardin, MT 59034

James C. Bartlett
HASH, O'BRIEN & BARTLETT
P.O. Box 1178
Kalispell, MT 59903

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
Deputy