No. 91-389

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

IN RE THE MARRIAGE OF

GORDON R. SULLIVAN,

      Petitioner and Appellant,

  and

ANNETTE M. SULLIVAN,

      Respondent and Respondent.

APPEAL FROM:   District Court of the Eighth Judicial District,
                In and for the County of Cascade,
                The Honorable Thomas M. McKittrick, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

      Antonia P. Marra; Bell & Marra, Great Falls, Montana

      For Respondent:

      Robert F. James and William O. Bronson; James, Gray
      & McCafferty, Great Falls, Montana

Submitted on Briefs:  December 22, 1992

Decided:  June 10, 1993

Filed:      JUN 10 1993

FILED

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

Clerk

Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal from the Eighth Judicial District, Cascade County, the Honorable Thomas M. McKittrick presiding. Appellant Gordon Sullivan (Gordon) appeals from an order holding him in contempt, determining child support, allocating tax exemptions and medical costs, and refusing to modify child support retroactively. He also appeals from an order awarding attorney's fees to respondent Annette Sullivan (Annette). We affirm in part, reverse in part, and remand for further proceedings.

Gordon raises the following issues on appeal:

1. Did the District Court err in determining the amount of child support?

2. Did the District Court err in allocating the tax exemptions and medical costs?

3. Did the District Court err in refusing to modify child support retroactive to the time Gordon filed his first motion for modification?

4. Did the District Court err in holding Gordon in contempt and awarding Annette her attorney's fees and costs?

Gordon and Annette were married on July 18, 1970. They dissolved their marriage under the terms of a Decree of Dissolution entered by the District Court on September 19, 1985. Three children--Riley, Amanda, and Ryan, all minors at the time of the dissolution--were born of the marriage. The decree incorporated the provisions of a Property Settlement Agreement dated September 17, 1985 (the 1985 agreement). The agreement provided that: 1) the

2

parties would have joint custody of the children with Annette given exclusive discretion to determine the primary residence; 2) Gordon would pay Annette child support of $150 per child per month through the clerk of the district court; 3) child support would increase to $175 a month per child in one year, and $200 a month per child two years from the date of the agreement; 4) Gordon could claim Amanda and Ryan for income tax exemptions if his child support and maintenance obligations were current; 5) Gordon would provide medical and dental insurance and be responsible for the deductibles for the children during their minority, while both parties would be responsible for expenses not covered by insurance; and 6) the successful party would be awarded reasonable attorney's fees in any action commenced to enforce, modify, or interpret any provision of the agreement.

At the time of the dissolution Gordon worked as the Director of Marketing and Special Projects at Columbus Hospital, earning approximately $36,000 a year from all sources. Annette worked as a secretary earning approximately $10,000 a year from all sources.

In 1985 or 1986, Gordon suffered a work-related back injury which he exacerbated a few years later. He received $568 bi-weekly workers' compensation benefits through December 1989, at which time he received a $14,900 lump sum impairment award. The hospital eliminated Gordon's position on April 4, 1988, before he could return to work.

In August 1988, Annette moved for an order requiring Gordon to show cause why he should not be held in contempt for failing to pay

3

over $3,000 in past due child support payments, letting the health insurance coverage lapse, failing to pay maintenance, and failing to pay necessary dental bills for his children. Gordon responded to that motion with a counter-motion, based on his reduced income, asking the court to reduce the amount of child support and require Annette to obtain insurance.

On December 19, 1989, the parties finally entered into a stipulation (the 1989 stipulation) regarding enforcement of the 1985 agreement. The District Court entered an order 1) requiring the parties to abide by the stipulation; 2) modifying the 1985 agreement where inconsistent with the stipulation; 3) entering judgment against Gordon pursuant to the stipulation; and 4) modifying child support to $200 a month for each of two children, eliminating child support for Riley who was living with Gordon at that time.

In the 1989 stipulation, the parties agreed:

1.  Gordon owed Annette $3,600 in past due maintenance but was to have a credit of $2,992.98 as an offset against that amount;

2.  Gordon owed Annette $4,920 in past due child support that was to be offset by $1,500 for the amount Annette owed Gordon because Riley lived with Gordon for ten months in 1989;

3.  Gordon owed Annette $1,300 in attorney's fees she incurred in bringing her motion to enforce the dissolution decree.

Gordon further stipulated that any child support or maintenance arrearages, or any obligations agreed to under the stipulation would become an attachment on any lump sum payment he

4

received for his workers' compensation claim. Gordon received a $50,000 lump sum settlement of his claim in November 1990.

On November 13, 1990, Gordon renewed his original motion to modify child support, which he had made in 1988, and asked that the modification be retroactive to his first motion. He also asked that he be allowed to claim as tax exemptions the two children who were then living with him.

Annette responded by asking the court to hold Gordon in contempt for failing to comply with the court order enforcing the 1989 stipulation. She also asked the court to determine the new amount of child support effective October 23, 1990--the date the parties entered into a stipulation modifying residential custody and allowing for re-examination and reduction of child support.

After a hearing on the renewed motion to modify child support, the court entered its findings of fact, conclusions of law and order on February 28, 1991:

1. Holding Gordon in contempt for failing to pay from his lump sum workers' compensation settlement, all sums due and owing;

2. Holding Gordon responsible for Annette's attorney's fees;

3. Setting Gordon's child support obligation at $72 per month for the one child still living with Annette;

4. Ordering Gordon to pay Annette $9,324.13 and to immediately release to Annette as partial payment the $6,520 held in escrow by the clerk of the district court;

5. Requiring Annette's attorney to submit an affidavit of attorney's fees;

5

6. Allowing Annette tax exemptions for Amanda and Ryan and allowing Gordon an exemption for Riley for the year 1990.

Gordon moved to alter or amend this judgment. The court denied this motion except for a correction to give Gordon credit for $1,000 Annette had previously received.

The court held a hearing on attorney's fees on March 25, 1991, after which it ordered Gordon to pay Annette $3,357.25 as her reasonable attorney's fees.

Gordon appeals from the order dated February 28, 1991, from the order awarding attorney's fees, and from an order denying his motion to alter or amend the judgment.

I

Did the District err in determining the amount of child support?

At the hearing on Gordon's renewed motion, Annette presented testimony from John Koch, a staff attorney for the Montana Department of Social and Rehabilitation Services, Child Support Enforcement Division. Mr. Koch explained how he determined on Worksheet #2 that Gordon owed Annette $72 per month in child support. He based his calculation on a gross income of $32,450 for Gordon. This was a two-year average of the $14,900 Gordon received in 1989 and the $50,000 he received in 1990. Gordon assigns error to the court's use of these figures to determine gross income because they are, according to Gordon, a replacement of a stream of income. He argues the $50,000 is meant to be a replacement of income at a rate of $149.50 per week over nine and one-half years

6

under § 39-71-701, MCA.

Workers' compensation benefits are one of the factors to be considered in determining child support under § 40-4-204(2), MCA. See In re Marriage of Durbin (1991), 251 Mont. 51, 823 P.2d 243. They are also specifically included as an item of gross income under the regulations promulgated by the Department of Social and Rehabilitation Services. 46.30.1508(1)(a), ARM.

Mr. Koch testified that there was no specific rule on how a lump sum award of workers' compensation benefits should be treated. Mr. Koch agreed that it would be reasonable to spread the benefits over the nine and one-half years they were intended to replace, but said that "[w]e essentially want to leave that up to a trier of fact to determine." In its findings of fact the District Court found that: 1) Gordon had received $598 bi-weekly payments for most of 1989; 2) Gordon received a $14,900 lump sum (impairment award) in 1989; 3) Gordon received a $50,000 lump sum settlement of his workers' compensation claim in 1990; 4) after receiving the settlement in 1990 he bought ski equipment for each of his children, himself, and his current wife, and he bought ski passes for each of these people except for Ryan, who was living with Annette; 5) Gordon purchased two vehicles in late 1990; 6) Gordon spent over $26,000 of his settlement between November 1990 and January 21, 1991; 7) Gordon presented no authority supporting his claim that the Child Support Guidelines provide for spreading the income over nine and one-half years.

Based on the foregoing findings, the District Court concluded

that the worksheet prepared by Mr. Koch was a "reasonable method for determining the child support due and owing under this fact situation." Specifically the court relied on the fact that Gordon had not treated the lump sum as if it would last for nine and one-half years and that it would be spent by June 1991.

A presumption exists in favor of the district court's determination of child support, and that determination will only be overturned where the court abused its discretion. In re Marriage of Sacry (1992), 253 Mont. 378, 382, 833 P.2d 1035, 1038.

Here, the District Court properly found that Gordon would have spent the entire $50,000 lump settlement by June of 1991. However, it did not find, nor was there any evidence to suggest, that Gordon would receive further workers' compensation benefits. Therefore, there was no basis for presuming that Gordon's income would be $32,450 after 1990. Although we sympathize with the District Court in its dilemma, we conclude that it abused its discretion in attributing that amount of income to Gordon after 1990.

In the 1989 stipulation, the parties agreed on the amount of support Gordon owed as of December of that year. We will not disturb the amounts agreed to in that stipulation. (See our discussion of Issue III.) For 1990, we believe that the child support in this case should be determined based on the income Gordon actually received that year. Therefore, the $50,000 lump sum settlement should be used to determine his obligation for 1990. A second calculation will then be necessary to determine the amount of child support due beginning in 1991.

8

Under the unique facts of this case, we believe this method accurately reflects the manner in which Gordon treated his income and at the same time reflects the fact that Gordon will apparently not receive future workers' compensation benefits. We therefore remand for a redetermination of child support.

II

Did the District Court err in determining the allocation of tax exemptions and medical costs?

We will first address the allocation of tax exemptions. The dissolution decree and the 1985 agreement provided that Annette would be entitled to claim Riley for the taxable year 1985 and any other year thereafter and that Gordon would be entitled to claim Amanda and Ryan for 1985 and thereafter provided that he was current on his child support obligation. At that time Annette was the primary residential custodian of all three children. In December 1989, the parties agreed and the court entered an order recognizing Gordon as the primary residential custodian of Riley. On October 23, 1990, the parties stipulated that Gordon would be the residential custodian of Amanda as she had been living with him since August of that year.

The order of February 28, 1991, allowed Annette to claim tax exemptions for Ryan and Amanda for 1990 and allowed Gordon to claim Riley as an exemption. Amanda had lived with Annette until August of 1990. This order does not comport with the tax exemption arrangement in the 1985 agreement, rather it comports with the tax code. See I.R.C. §§ 151, 152. The court then ordered that future

9

tax exemptions would be determined by the tax code and by the 1985 agreement. Gordon takes issue with this order because he claims the tax regulations and the 1985 agreement are in conflict with each other and with the current custody arrangement. It appears that the tax exemption provision of the agreement no longer applies as the parties have stipulated to a change in custody and they do not challenge the 1990 arrangement, which is in line with the tax code. This appears to leave the parties to follow only the tax regulations in the future, and does not warrant a remand on this issue.

Gordon also claims error because the court awarded a combined principal and interest payment of $373.16 to Annette based on a principal of $336.47 which he claims he does not owe. Gordon's claim arises only because he has not looked closely at the pertinent exhibit. That exhibit clearly identifies the payment as one for "medical + premium." This combines two amounts stipulated in the 1989 stipulation. Gordon claims there is no figure of $336.47 contained in that agreement. True. But the amount is the sum of an $80 insurance premium and $256.47 in medical bills. We hold there was no error.

III

Did the District Court err in failing to make the modification of child support retroactive to the time Gordon filed his first motion for modification?

Gordon claims the District Court should have made the modification retroactive to his October 20, 1988, counter-motion to

10

modify child support. The 1989 stipulation governs here. In the stipulation, Gordon agreed to the amount he owed in past due child support. He also agreed to the entry of an order based on that stipulation. Annette gave up any other claims which were past due and owing, other than those included in the stipulation. Gordon now argues that the court should reopen that order and modify what the parties agreed. However, the District Court was bound by the terms of the stipulation as they were not contrary to law, court rule, or public policy. School Dist. No. 4 v. Colburg (1976), 169 Mont. 368, 372, 547 P.2d 84, 86-87. See also Morris v. McCarthy (1972), 159 Mont. 236, 497 P.2d 102 (district court properly dismissed complaint where plaintiff had stipulated in a prior action that he would be bound in a later action by the property damage award in the first action).

The District Court did not err in refusing to make the modification retroactive, especially where Annette gave up some claims in order to reach the stipulation.

IV

Did the District Court err in holding Gordon in contempt and awarding attorney's fees and costs?

In the 1989 stipulation, Gordon agreed that the arrearages and other obligations would become an attachment on any lump sum payment he received from his workers' compensation claim. When Gordon received that settlement in November 1990, rather than directly giving Annette the money he agreed he owed her, he placed $7,520--the amount of principal he determined he owed Annette--in

11

escrow with the clerk of the district court pending the outcome of the hearing on his renewed motion. He dissipated most of the remaining money. The District Court held Gordon in contempt for failing to pay Annette the agreed sum in a timely fashion. Generally, contempt orders are final, conclusive, and not appealable except by writ of certiorari. Section 3-1-523, MCA. However, an exception is made for dissolution proceedings, although we must limit our standard of review to whether the district court acted within its jurisdiction and whether the evidence supports the findings. In re Marriage of Sessions (1988), 231 Mont. 437, 441, 753 P.2d 1306, 1308. Here, the stipulation provided that Annette was to have an attachment against Gordon's workers' compensation settlement in an agreed amount. When Gordon received that settlement, he failed to release the money he agreed he owed to Annette in a timely fashion. Therefore, the evidence supports the court's finding.

Lastly, Gordon argues that the District Court erred by awarding Annette her attorney's fees and costs. In its findings in its Order Awarding Attorney's Fees, the District Court found that: 1) Annette was seeking attorney's fees to pay for expenses incurred to enforce a previous court order for child support; 2) she had negotiated a lien on Gordon's workers' compensation settlement that was not honored by Gordon's attorneys; 3) she had to take extraordinary measures to discover his income; 4) he did not timely release funds that he knew were owing for past due child support; 5) Gordon had over $80,000 income for a two-year period that was

12

not subject to state or federal deductions; 6) Gordon's actions unreasonably increased Annette's attorney's fees; and 7) the amount submitted by Annette was a reasonable amount for attorney's fees.

The property settlement agreement provided for an award of attorney's fees to the prevailing party. Section 40-4-110, MCA, also provides authority for awarding attorney's fees. Under the statute, an award of attorney's fees is discretionary and will not be disturbed absent an abuse of that discretion. In re Marriage of Swanson (1986), 220 Mont. 490, 496, 716 P.2d 219, 223. We look to whether substantial credible evidence supports the findings. In re Marriage of Hall (1990), 244 Mont. 428, 436, 798 P.2d 117, 122. Substantial evidence supports the District Court's findings. It did not abuse its discretion by awarding Annette her reasonable attorney's fees.

Affirmed in part, reversed in part, and remanded for further proceedings in conformity with our holding.

_John Conway Harrison_
                    Justice

We concur:

_Karla M. Gray_

_William Edwith_

_Tom Trieweiler_

_R. C. McDonough_

_Justices_                    13

June 10, 1993

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:


Antonia P. Marra
BELL & MARRA
9 Third St. N., Suite 201
Great Falls, MT 59401

Robert F. James & William O. Bronson
James, Gray & McCafferty
P.O. Box 2885
Great Falls, MT 59403


ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
    Deputy