No. 97-544

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 29


IN RE MARRIAGE OF

TAMMI MARIA BAER,

Petitioner and Appellant,

and

MONTE WAYNE BAER,

Respondent and Respondent.



APPEAL FROM:    District Court of the Twentieth Judicial District,
In and for the County of Lake,
The Honorable C. B. McNeil, Judge presiding.


COUNSEL OF RECORD:

For Appellant:

David C. Humphrey, Humphrey Law Office,
Polson, Montana

For Respondent:

James A. Manley, Law Offices of Manley & O'Rourke-Mullins,
Polson, Montana



Submitted on Briefs: January 15, 1998

Decided:    February 12, 1998
Filed:


_____
Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

¶1    Tammi Baer filed a petition for dissolution of her marriage to Monte Baer in the
District Court for the Twentieth Judicial District in Lake County.  After a trial, the
District Court granted the dissolution, divided the marital property, and awarded
residential custody of their children to Monte.  Tammi appeals.  We affirm in part and
reverse in part the judgment of the District Court.

¶2    There are three issues on appeal:

¶3    1.    Did the District Court err when it awarded custody of the couple's children to Monte?

¶4    2.    Did the District Court err when it divided the marital estate?

¶5    3.    Did the District Court err when it declined to hold Monte in contempt of court?

                         FACTUAL BACKGROUND

¶6    Tammi and Monte Baer were married in September 1993, in Lake County.  They have three children: Dawson Jerome, who is now three years old; Megan Amber, who is now two years old; and Cody Tyler Dillon, who is now one year old.  Tammi is also the mother of five-year-old Eric, to whom she gave birth prior to her marriage; Monte is not Eric's biological father.

¶7    Monte is a licensed pilot and certified aircraft mechanic.  Prior to and during the marriage, Monte owned and operated Mission Aviation, a business which repairs and sells small aircraft.  His father, Wayne Baer, has a similar business and owns a hangar and runway in Ronan.  Monte has an informal agreement with Wayne that he can use the hangar and runway in exchange for his services when Wayne needs help on a project.  The two also sometimes invest in aircraft together.  Monte's income during the marriage averaged approximately $1,000 per month, and at no point during the marriage did Tammi work outside of the home.

¶8    Soon after their marriage, Monte and Tammi, who was pregnant at the time, went to Alaska where Monte had temporary work.  They returned to Montana after three months and moved into a mobile home next to the hangar on land owned by Monte's parents.  Elsewhere on the land owned by Monte's parents was a school and church in which the family were active participants.  Monte returned to work in Alaska in 1994 for approximately six months, and then again for ten weeks in 1995.  After he returned, Monte and Tammi borrowed money from Monte's brother and purchased a different mobile home, which they placed on Monte's parents' land near the end of the runway.

¶9    With the exception of the couple's mobile home, their only other significant asset is a 1990 van, which they purchased with a $6,000 loan from Wayne.  Monte owned a plane prior to the marriage, but he sold it in 1994, used the proceeds to purchase a one-half interest in a second plane, and rebuilt it with Wayne in an attempt to sell it; they have not yet sold the plane.  Monte and Tammi still owe approximately $4,800 to Wayne for the van, and approximately $9,000 for the mobile home.

¶10   On March 25, 1996, Tammi filed a petition for dissolution in the District Court.  On April 10, the District Court entered an order to enforce a temporary stipulation between the parties.  The stipulation provided that Tammi was to have custody of the children and remain in the mobile home while the action was pending, and that Monte was to refrain from any interference to her occupancy.  It also prohibited Tammi and Monte from disturbing each other's peace or encumbering each other's assets.  Finally,

the stipulation set forth Monte's visitation schedule with the children and required Monte to pay Tammi $350 per month for child support.

¶11 During the period of the stipulation, numerous conflicts occurred between the parties regarding Monte's visitation with the children. The exchange of the children became so volatile that Tammi tape-recorded the exchanges and conversations, and Monte always had one of his family members accompany him to videotape the exchanges. Additionally, Tammi and/or her family involved law enforcement officials in the exchanges on several occasions.

¶12 Other problems occurred as well. For example, Monte stopped making child support payments to Tammi in August 1996. Tammi sought assistance from the State, and eventually the Child Support Enforcement Division assumed responsibility for the collection and distribution of child support payments. However, Monte has apparently not made any payments since August 1996. In September 1996, Wayne served an eviction notice on Tammi. Monte had tried to dissuade Wayne from evicting Tammi, but he nonetheless accompanied Wayne when Wayne served the notice. Wayne also filed liens against the van and mobile home.

¶13 On February 4, 1997, Tammi filed a motion for citation and order to show cause why Monte should not be held in contempt for violation of the stipulation. She submitted affidavits that described Monte's role in the attempted eviction and lien filings, and his failure to pay child support. She also alleged that Monte violated the order and harassed her when they exchanged the children, and that at times he refused to return the children. Finally, she alleged abuse by Monte after Eric had been spanked and Cody sustained a head injury during visitations with Monte. Tammi also complained of the incidents to the Lake County Department of Family Services.

¶14 The District Court issued the order and set a hearing at which to show cause for February 26, 1997. On February 10, Monte requested a final hearing date and that the show cause hearing be held at the same time, based on the fact that evidence and witnesses would be the same at each hearing. Two days later, the District Court vacated the initial show cause hearing date and set March 10, 1997, for the final hearing and show cause hearing. Tammi first sought to vacate the March 10 hearing date due to a conflict with counsel's schedule, and then moved the District Court to reinstate the February 26 show cause hearing. After the parties briefed the issue, the District Court granted Tammi's motion and vacated the March 10 hearing date, but denied her request to reinstate the original show cause hearing date. Instead, it set the hearing and trial for May 22, 1997.

¶15 The parties continued to seek a hearing and moved to alter temporary custody and visitation. Both Tammi and Monte alleged abuse by the other as the cause of the injury to Cody. The District Court refused to hold a separate hearing to consider the motions and retained May 22 as the date for trial.

¶16 A three-day trial was held, after which the District Court issued findings of fact, conclusions of law, and a decree of dissolution. The District Court awarded the parties joint legal custody, and found that it would be in the best interests of the children if Monte was the primary residential custodian. It also concluded that neither party should receive maintenance nor child support. The District Court awarded Monte the van and the mobile home, along with responsibility for the debt on those items, and found that the business inventory and plane were a part of his premarital property to which Tammi was

not entitled.  Tammi retained the car which she owned prior to the marriage and received miscellaneous household items as her share of the marital property.  Finally, the District Court concluded that all of Tammi's motions to have Monte held in contempt should be denied.

ISSUE 1

¶17  Did the District Court err when it awarded custody of the couple's children to Monte?

¶18  Our standard of review for a district court's award of child custody is whether the district court's findings are clearly erroneous.  See In re Marriage of Dreesbach (1994), 265 Mont. 216, 220, 875 P.2d 1018, 1021.  When the findings are supported by substantial credible evidence, we will affirm the district court's decision unless a clear abuse of discretion is shown.  See In re Marriage of Hogstad (1996), 275 Mont. 489, 494, 914 P.2d 584, 587; Dreesbach, 265 Mont. at 221, 875 P.2d at 1021.

¶19  In a marriage dissolution, a district court shall determine child custody matters in accordance with the best interests of the child.  See § 40-4-212, MCA.  The statute lists many factors for the district court to consider in its determination of a child's best interest, and although it need not make specific findings pertaining to each factor, a district court must consider the guidelines in the statute.  See In re Marriage of DeWitt (1995), 273 Mont. 513, 516, 905 P.2d 1084, 1086; In re Marriage of Saylor (1988), 232 Mont. 294, 297-98, 756 P.2d 1149, 1151.

¶20  Here, the District Court made specific findings for each factor.  Tammi claims that three of the findings are erroneous.  She contends that the District Court erred when it characterized the children's relationship with Monte as excellent and with Tammi as good, and when it found that Tammi's and her mother's "frequent" and "unnecessary" involvement of law enforcement officers was not in the children's best interests.  See § 40-4-212(1)(c), MCA (1995).  Tammi also asserts that the District Court erred when it found that the children's adjustment to their home, church, and community is better when they are with Monte than when they are with Tammi.  See § 40-4-212(1)(d), MCA (1995).  Finally, she argues that the District Court erred when it found that there was no evidence of physical abuse or threat of physical abuse by either parent against each other or the children.  See § 40-4-212(1)(f), MCA (1995).

¶21  The District Court heard testimony from many individuals who knew both Tammi and Monte and their relationship with the children.  Each party attempted to portray themselves as the better parent and, as Tammi contends, there was evidence presented which was favorable to Tammi.  Our inquiry on appeal, however, focuses instead on whether there is substantial credible evidence to support the District Court's finding that the children had a better relationship with and were better adjusted while with Monte.

¶22  Tammi directs this Court to the testimony that she offered regarding Monte's alleged abuse of the children and the need to involve law enforcement when they exchanged the children as support for her contention that the District Court erred when it found Monte's relationship with the children better than her relationship.  Upon review of the record, however, we find testimony which not only disputes that testimony, but which specifically depicts Monte as a better parent.  Especially here, where the testimony often conflicted and where each party elicited negative testimony regarding the other parent's behavior, character, and parenting skills, we recognize that the weight to be given that testimony and a determination of the witnesses' credibility is squarely within

the province of the District Court.  See In re Marriage of Smith (1988), 232 Mont. 527, 529, 757 P.2d 784, 785; In re Marriage of Speer (1982), 201 Mont. 418, 422, 654 P.2d 1001, 1003; see also In re Marriage of Mitchell (1991), 248 Mont. 105, 108, 809 P.2d 582, 584.  Therefore, we conclude that the District Court was not clearly erroneous when it found that the children's relationship and adjustment is better while they are with Monte than it is while they are with Tammi.  See also In re Marriage of Rolfe (1985), 216 Mont. 39, 44-45, 699 P.2d 79, 82.

¶23  Tammi also asserts that the District Court erred when it found that there was no evidence or threat of physical abuse by Tammi or Monte against each other or the children.  Upon review of the record, we find that each party made allegations of abuse and that they each offered evidence to attribute the children's injuries to the other's abuse.

¶24  Tammi relies heavily on a doctor's report that described Cody's injury as inconsistent with Monte's explanation of the incident, and on what she describes as a substantiated finding of abuse against Eric from the DFS.  At trial, however, a DFS official testified that she determined that Monte had not physically abused Cody, and that the physicians' reports do not "come to a consensus about how the injury could have occurred."  There was also testimony that the DFS findings were being reviewed and challenged for, among other reasons, the DFS's failure to interview eyewitnesses to the incident.  Given the conflict and uncertainty in the testimony, we conclude that the District Court was not clearly erroneous when it found that the mutual allegations of abuse did not give rise to a finding of physical abuse against either parent.

¶25  Finally, Tammi asserts that because she was the primary caretaker, the District Court erred when it denied her residential custody, pursuant to § 40-4-212(3)(a), MCA (1995).  The statute states:
     (3)  The following are rebuttable presumptions and apply unless contrary to the best interest of the child:
     (a)  Custody should be granted to the parent who has provided most of the primary care during the child's life.

We stated in In re Marriage of Abrahamson (1996), 278 Mont. 336, 343, 924 P.2d 1334, 1338-39, that the statute creates only a rebuttable presumption, and that a district court's failure to mention it does not necessarily mean that it failed to consider the presumption or that it committed reversible error.  Rather, we recognize that the statute affords the primary caregiver an initial presumption in the district court that it is in the children's best interests for the primary caregiver to be awarded custody, but that the non-primary caregiver can rebut that presumption with substantial credible evidence of his own that the children's best interests would be served through an award of custody to him.

¶26  Here, Monte put forth substantial credible evidence to support his contention that it would be in the children's best interests for him to have residential custody.  As we stated above, the findings reflect that the District Court considered the best interests of the children, the findings are not clearly erroneous, and we conclude that the District Court did not abuse its discretion when it determined that Monte should have custody.

¶27  We affirm the District Court's judgment as to the custody of the children.

ISSUE 2

¶28  Did the District Court err when it divided the marital estate?

¶29  We review a district court's division of marital property to determine whether the findings on which it relied are clearly erroneous.  See In re Marriage of Stufft (1996), 276 Mont. 454, 459, 916 P.2d 767, 770.  If the findings are not clearly erroneous, we will affirm the distribution of property unless the district court abused its discretion.  See Stufft, 276 Mont. at 459, 916 P.2d at 770; Hogstad, 275 Mont. at 496, 914 P.2d at 588; In re Marriage of Smith (1995), 270 Mont. 263, 267-68, 891 P.2d 522, 525.  In a marriage dissolution proceeding, the test for an abuse of discretion is whether the district court acted arbitrarily without employment of conscientious judgment or exceeded the bounds of reason resulting in substantial injustice.  See In re Marriage of Meeks (1996), 276 Mont. 237, 242, 915 P.2d 831, 834.

¶30  The division of marital property is governed by § 40-4-202, MCA.  Pursuant to the statute, the district court has broad discretion to distribute the marital estate in a manner which is equitable to each party according to the circumstances of the case.  See In re Marriage of Maedje (1994), 263 Mont. 262, 265, 868 P.2d 580, 582.

¶31  Tammi contends that the District Court erred when it found that a used motorcycle and a one-half interest in a used Ford van were Monte's premarital property.  She contends that he wrote the checks for the items during the marriage, and therefore, that she is entitled to a share of their value.  Monte, on the other hand, asserts that there was no testimony to support Tammi's alleged interest in the motorcycle or van.

¶32  Unless a statutory exception exists to call into question the joint nature of the property, such as in the case of property acquired by gift or devise, property acquired during the marriage is generally presumed to be marital property in which both spouses share an interest and which is subject to equitable apportionment by the district court.  See § 40-4-202, MCA.  Here, Monte purchased the motorcycle with a $1,600 check on February 28, 1994, and his interest in the Ford van with a check dated January 2, 1995.  Both checks were admitted at trial, but there was only limited testimony about the acquisition of the motorcycle and Ford van.  Even if the parties' testimony did not explicitly establish when the motorcycle and van were acquired, the record clearly reflects that the motorcycle and Ford van were acquired during the marriage.  Moreover, Monte has never suggested that they were acquired by gift, devise, or some other means which would lead us to consider them his exclusive property.  Accordingly, we conclude that the District Court erred when it ignored the record and found that the motorcycle and Ford van were Monte's premarital property, and when on that basis it failed to include those assets in its calculation of the parties' respective shares of the marital estate.

¶33  Tammi also contends that the District Court erred when it failed to award her a share of the appreciated value of Monte's one-half interest in the plane that he owns with his father and a share of the appreciated value of the Mission Aviation inventory.

¶34  Tammi admits that Monte's business inventory was property that he owned prior to their marriage, and as such, she asserts an interest in only the appreciated value of the inventory.  She used figures from the parties' tax forms to assert that the value of the inventory increased $24,500 during the marriage.  At trial, however, Monte testified that the 1993 tax form on which Tammi relies underestimated the inventory and that during the course of the marriage the business inventory had in fact been slightly reduced.  He submitted that the current value of the inventory was $26,100, and the District Court adopted that figure; that value was $200 greater than the premarital value adopted by the

District Court.

¶35   As stated above, the District Court has broad discretion to achieve an equitable distribution of the marital estate.  Similarly, it has discretion to adopt any reasonable valuation of property that is supported in the record.  See In re Marriage of Luisi (1988), 232 Mont. 243, 247, 756 P.2d 456, 459.  The determination of property valuation is a factual issue within the province of the district court.  See Meeks, 276 Mont. at 247, 915 P.2d at 838.  We conclude that the value assigned by the District Court to the inventory was supported by the record, was not clearly erroneous, and that the District Court did not act arbitrarily without employment of conscientious judgment or exceed the bounds of reason when it distributed the property.

¶36   Because the District Court must make an equitable division of the marital property, the fact that it did not award Tammi an equal share of the appreciated inventory does not necessarily mean that it erred or that it abused its discretion.  Rather, in light of the overall division of the marital estate, we conclude that the District Court did not abuse its discretion when it declined to award Tammi a share of the minimal appreciation in the business inventory.

¶37   Tammi also contends that she is entitled to a share of what she alleges is the appreciated value of Monte's interest in the plane.  The District Court found that the plane in which Monte currently owns a one-half interest with his father constituted Monte's premarital property.  Although Monte purchased the plane during the marriage, the funds which he used to purchase the plane can be traced directly to the proceeds from the sale of the plane he owned prior to the marriage.  Tammi claims, however, that the plane has a value of $57,000, based on its list price in a sale publication, and that because Monte allegedly used $6,000 of marital income, as well as his own labor, to improve the plane during the marriage, she is entitled to a share of his interest.

¶38   Monte testified at trial that he received $25,000 from the sale of a plane that he owned prior to the marriage.  He also testified that he invested $16,000 from the proceeds of that sale to purchase the plane that he currently owns with his father, and that he later gave his father another $6,000 from the proceeds to complete repairs and work on the second plane.  Also in the record was testimony that the value of Monte's interest in the plane that he owns with his father is approximately the same as the value of the plane that he owned prior to the marriage.

¶39   Tammi's only basis for her assertion that the plane is worth $57,000 is the price at which Monte and Wayne have listed it for sale.  Without a sale, however, that price does not necessarily reflect the plane's value.  Furthermore, the only basis for her assertion that the $6,000 check to Wayne was marital income, as opposed to the remainder of Monte's proceeds from the sale of his first plane, was the fact that it was written during the marriage and after they had returned from Alaska where Monte had earned the majority of his income that year.  Given the entirety of the record and absent some other proof from Tammi, it is difficult to ascertain whether the plane has in fact appreciated above and beyond the value of Monte's premarital interest in the first plane.  As stated above, we will not substitute our judgment for the District Court's.  Accordingly, we conclude that there is substantial credible evidence to support the District Court's findings, its findings regarding Monte's interest in the plane were not clearly erroneous, and the District Court did not abuse its discretion when it found that Tammi was not entitled to a share of Monte's interest in the plane.

¶40 We affirm the District Court's distribution of the plane and business inventory. We reverse the District Court's exclusion of the motorcycle and the Ford van from the marital estate, and remand to the District Court for reconsideration of the property distribution after inclusion of those items in the marital estate.

ISSUE 3

¶41 Did the District Court err when it declined to hold Monte in contempt of court?

¶42 Although contempt orders by a district court are final and generally not reviewable by this Court, we make an exception in marriage dissolution proceedings. See Dreesbach, 265 Mont. at 223-24, 875 P.2d at 1022; In re Marriage of Boharski (1993), 257 Mont. 71, 77, 847 P.2d 709, 713. Our review, however, is limited to whether the district court acted within its jurisdiction and whether the evidence supports the findings. See In re Marriage of Sullivan (1993), 258 Mont. 531, 539-40, 853 P.2d 1194, 1200.

¶43 Tammi asserts that the District Court erred when it failed to hold Monte in contempt for his alleged multiple violations of the stipulation. She contends that Monte violated the stipulation when he: (1) failed to pay child support; (2) disturbed her peace; (3) encumbered the van and mobile home; and (4) assisted Wayne's effort to evict her from the mobile home. The claim relies on her allegation that the District Court erred when it ignored substantial credible evidence and, in so doing, abused its discretion when it failed to find Monte in contempt.

¶44 Although it is well-established that we make an exception to review a district court's contempt decision in family law matters, the majority of our prior cases have addressed review of a court's order to find a party in contempt. See Dreesbach, 265 Mont. 216, 875 P.2d 1018; Sullivan, 258 Mont. 531, 853 P.2d 1194; Boharski, 257 Mont. 71, 847 P.2d 709; In re Marriage of Sessions (1988), 231 Mont. 437, 753 P.2d 1306. In that context, we agree that our review should be limited to determine whether the record supported the district court's findings. In a case such as this, however, where we are being asked to review a district court's decision not to find a party in contempt, we recognize that a different standard of review is appropriate.

¶45 A district court has the responsibility to enforce its own orders. See In re Marriage of Boyer (1995), 274 Mont. 282, 289, 908 P.2d 665, 669. We stated in In re Marriage of Jacobson (1987), 228 Mont. 458, 464, 743 P.2d 1025, 1028, that contempt is a discretionary tool of the court to enforce compliance with its decisions. We also stated that its power to inflict punishment by contempt is necessary to preserve the dignity and authority of the court. See also Woolf v. Evans (1994), 264 Mont. 480, 483, 872 P.2d 777, 779. Accordingly, where a district court has found that there is no such need to enforce compliance with its order or that the actions of a party do not present a challenge to its dignity and authority, we will not reverse its decision absent a blatant abuse of discretion.

¶46 Here, the District Court found that Tammi failed to satisfy her burden to prove the allegations of contempt, and that Monte offered evidence that he was not in violation of the stipulation. Upon review of the record, we conclude that it supports the District Court's findings; Tammi's assertion that the District Court ignored substantial credible evidence to make its decision is insufficient to find that it erred when there is also substantial credible evidence to support the decision. Accordingly, we hold that the District Court's findings related to the contempt issue are not clearly erroneous. Moreover, even if we agreed with Tammi's factual allegations and could conclude with certainty from the record that Monte violated the terms of the stipulation in the ways that

she alleges, the District Court's decision to find him in contempt would still be a matter within its discretion, based upon its perceived need to enforce its order or the threat to its authority.  Under the circumstances in this case, we find no abuse of discretion.

¶47  We affirm the District Court's decision to award custody to Monte and its decision that Monte was not in contempt of court.  We also affirm the District Court's distribution of the interest in the plane and business inventory, but we reverse its findings related to the motorcycle and Ford van and remand to the District Court for a reconsideration of the property distribution, if necessary, after inclusion of the van and motorcycle in the marital estate.

/S/  TERRY N. TRIEWEILER


We Concur:

/S/  J. A.  TURNAGE
/S/  W. WILLIAM LEAPHART
/S/  JAMES C. NELSON
/S/  JIM REGNIER