No. 00-130

IN THE SUPREME COURT OF THE STATE OF MONTANA

2001 MT 24N

IN RE THE MARRIAGE OF

TIMOTHY W. SANNER,

Petitioner and Respondent,

and

SUE E. SANNER,

Respondent and Appellant.

APPEAL FROM: District Court of the Thirteenth Judicial District,

In and for the County of Yellowstone,

The Honorable Maurice R. Colberg, Jr., Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Lee Rindal, Rindal Law Firm, Billings, Montana

For Respondent:

J. Greg Tomicich, Briese & Tomicich, Billings, Montana

Submitted on Briefs: June 22, 2000
Decided: February 15, 2001

Filed:

_____

Clerk

Justice Jim Regnier delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number, and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2 Sue E. Sanner appeals from the Court's Findings of Fact and Conclusions of Law entered by the Thirteenth Judicial District Court, Yellowstone County, terminating her marriage with Timothy W. Sanner. Sue contends that the District Court erred when it designated Tim the primary residential parent for the couple's four minor children. We affirm.

## BACKGROUND

¶3 Tim and Sue Sanner were married on September 16, 1989. At the time of trial, the couple had four minor children: Emily, age nine; Jordan and Sidney, both age seven; and Tyler, age five. Tim and Sue separated in October 1998. From December 26, 1998, until June 1, 1999, Tim was the sole provider of parental care for the children.

¶4 On January 22, 1999, Tim filed a Petition for Dissolution of Marriage. On June 7, 1999, the District Court ordered Court Services to investigate the home and circumstances of Sue and Tim and make recommendations regarding care, custody, and control of the minor children. A bench trial was held on December 23 and 27, 1999. The court issued its findings of fact and conclusions of law on January 5, 2000, designating Tim the primary residential parent for all four of the couple's minor children. Sue appeals.

## STANDARD OF REVIEW

¶5 We review a district court's award of child custody to determine whether the district court's findings are clearly erroneous. *In re Marriage of Baer*, 1998 MT 29, ¶ 18, 287 Mont. 322, ¶ 18, 954 P.2d 1125, ¶ 18. If the court's findings are supported by substantial credible evidence, we will affirm its decision unless a clear abuse of discretion is shown. *Baer*, ¶ 18.

## ISSUE ONE

¶6 Whether the District Court erred when it designated Tim the primary residential parent for the couple's four minor children?

¶7 Sue contends that the District Court abused its discretion when it designated Tim the primary residential parent. Sue argues that the court's finding that Tim's alcohol use will not affect his parenting ability is erroneous. In this regard, Sue observes that Tim acknowledged that he has two convictions for driving under the influence of alcohol and he testified that he has consumed alcohol before driving his vehicle with his children as passengers.

¶8 In a marriage dissolution, a district court shall determine child custody matters in accordance with the best interests of the child. Section 40-4-212, MCA. One of the relevant parenting factors the court must consider is "chemical dependency, as defined in 53-24-103, or chemical abuse on the part of either parent." Section 40-4-212(1)(g), MCA.

¶9 The District Court's findings with regard to the chemical dependency or abuse of Tim and Sue are as follows:

> Immediately prior to the separation of the parties there were some concerns about whether Sue was abusing prescription drugs. She has made statements indicating that she liked the high that medication gave to her. She was taking a significant amount of medication but apparently by doctor's prescription. There were some concerns about whether she was inappropriately taking medication of her daughter. On the job there was concern about whether she was inappropriately taking the medication of a patient which led to a reprimand. However, the Court is unable to find that Sue has a chemical dependency problem.
>
> Sue expressed concern about Tim's use of alcohol. Tim's use of alcohol has been an issue between the parties for a number of years. He had a conviction for DUI in 1986 and another in 1997. In 1997 as a part of his sentence he completed a chemical dependency evaluation which concluded that Tim misuses alcohol but that there were no indicators of chemical abuse or dependence. The Court notes that such evaluations to a large degree depend upon self reporting of information. Although there may be some concerns related to Tim's drinking the Court finds that Sue has exaggerated these issues at least related to recent times. There would be a concern if

the children were in a motor vehicle driven by Tim when he is impaired. Any claimed alcohol problem has not affected the ability of Tim to handle his job and, although it may be of some concern, the Court finds that it does not disable him as a parent.

¶10 The District Court's findings with regard to the chemical dependency or abuse of Tim and Sue are neither clearly erroneous nor do they indicate that the interests of the children would be best served by designating Sue the primary residential custodian. Rather, the facts adduced at trial raise valid concerns that both parents have or have had, if not chemical dependency or abuse problems, then serious chemical misuse problems.

¶11 With regard to Sue's chemical use, the testimony at trial supports the District Court's findings. For instance, Janelle Oakland testified that Sue told her that she had hallucinogenic drugs and that Sue approached Ms. Oakland's daughter about obtaining hallucinogenic drugs. Ms. Oakland's daughter confirmed this testimony. Sharon Kummerfeldt, one of the Sanners' neighbors, testified that Sue told her that she liked the high that prescription drugs gave her. Amber Sanner, Sue's daughter and Tim's adopted daughter, testified that Sue took prescription pain pills from her.

¶12 With regard to Tim's chemical use, the testimony at trial supports the District Court's findings. Tim has two DUI convictions. Edna Sanner, Tim's mother, reported to Ms. Tylene Merkel, a licensed counselor employed by Court Services of Yellowstone County to investigate the Sanners' home life, that Tim's alcohol consumption was decreasing. Tim admitted to drinking alcohol and driving with the children in the car, but he also testified that he was not inebriated at the time. Tim also admitted to being "tipsy" after a Christmas Party a week before trial and having driven while "tipsy" twice in the past six months. Sue also testified about numerous instances during her marriage where Tim drank too much.

¶13 We conclude that the District Court's findings with regard to the chemical use of both parents are supported by substantial credible evidence and do not favor, on their own, awarding primary custody to one parent over the other. Chemical use is not the only factor district courts are required to consider in developing a parenting plan that will be in the best interests of the children. *See* § 40-4-212, MCA. Sue has not challenged the District Court's other findings. Those findings support the court's parenting plan.

## ISSUE TWO

¶14 Whether the District Court erred when it refused to admit Sue's Exhibits B and C?

¶15 On June 7, 1999, the District Court ordered Court Services to investigate the home and circumstances of Sue and Tim and make recommendations regarding the care, custody, and control of the minor children. Ms. Merkel, a licensed counselor employed by Court Services of Yellowstone County, was in charge of the investigation and personally conducted an investigation of Tim. Sue was living in St. Louis, Missouri, during Ms. Merkel's investigation. Ms. Merkel requested that Sue find a licensed counselor or contact Court Services in Missouri to conduct the required investigation. Ms. Merkel found the investigation performed by the Missouri agency to be inadequate because they only conducted one home visit. The District Court admitted Ms. Merkel's report into evidence.

¶16 Sue offered letters and reports created by Peggy Hawkins, a licensed professional counselor in St. Louis. One of the reports was considered by Ms. Merkel in completing her investigative report, the other report was produced three days prior to trial and was not considered by Ms. Merkel. The District Court allowed Sue's attorney to question Ms. Merkel about the substance of the report she relied upon in completing her investigative report but refused to admit into evidence either of Ms. Hawkins' reports.

¶17 Sue argues that the court erroneously failed to admit the reports produced by Ms. Hawkins in conjunction with the family assessment requested by the court. Sue contends that pursuant to *In Re Marriage of Moseman* (1992), 253 Mont. 28, 830 P.2d 1304, the court was required to admit Ms. Hawkins' reports.

¶18 Section 40-4-215, MCA, authorizes a district court to order an investigation and report concerning custodial arrangements for a child. In *Moseman*, we held that although a district court is not bound by the recommendations contained in a court-ordered custody investigation, the court is required to consider the report in the process of reaching its final custody decision. *Moseman*, 253 Mont. at 31, 830 P.2d at 1306.

¶19 The District Court did not abuse its discretion pursuant to *Moseman* by refusing to admit Ms. Hawkins' reports. The court considered the official report created by Ms. Merkel with respect to the court-ordered custody investigation. *Moseman* requires nothing further.

¶20 Affirmed.

/S/ JIM REGNIER

We Concur:

/S/ KARLA M. GRAY

/S/ JAMES C. NELSON

/S/ TERRY N. TRIEWEILER

S/ W. WILLIAM LEAPHART