No. 91-099

IN THE SUPREME COURT OF THE STATE OF MONTANA

1991

IN RE THE MARRIAGE OF
DEBORAH LYNNE COOK,

      Petitioner and Appellant,

  and

MARK STEVEN COOK,

      Respondent and Respondent.

FILED

AUG 27 1991

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:  District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable William J. Speare, Judge presiding.


COUNSEL OF RECORD:

      For Appellant:

          Joan Meyer Nye; Nye & Meyer, Billings, Montana

      For Respondent:

          Christopher P. Thimsen, Billings, Montana


Submitted on Briefs:  July 25, 1991

Decided:  August 27, 1991

Filed:

Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

This is an appeal from the child custody determination in a dissolution of marriage. The District Court for the Thirteenth Judicial District, Yellowstone County, granted Mark Steven Cook sole custody of the parties' son and ordered that Deborah Lynne Cook's visitation be supervised. She appeals. We affirm.

Deborah lists nine issues, all of which relate to whether the District Court erred in its custody determination.

Deborah Lynne Cook (Deborah) and Mark Steven Cook (Mark) were married in 1986. Their marriage was marked by several lengthy separations, but it survived to produce a son, Ryan, born in January 1990. At the time of trial, Ryan was six months old.

Deborah had primary physical custody of the baby until an April 20, 1990, incident in which she confronted Mark at the Billings, Montana, airport. While the parties presented different descriptions of this incident, the District Court found that

> [Deborah] shoved Ryan into [Mark's] arms, became verbally abusive, physically removed [Mark's] boarding pass and had [Mark's] luggage pulled. In addition, [Deborah] knocked [Mark's] glasses off and physically removed [Mark's] camera, which [Mark] later retrieved with the assistance of airport security.

Mark had physical custody of the baby from that time until the time of trial. During Mark's pre-trial custody, Deborah was granted supervised visitation.

At trial, Deborah testified that Mark had been abusive during their marriage. Mark testified that Deborah had disappeared from

2

the marital home for months at a time, without explanation. Both parties presented testimony by mental health professionals who had treated Deborah. While their diagnoses differed, all agreed that Deborah was in need of continued mental health treatment.

A court-appointed social worker conducted an investigation on the issues of custody and visitation. In her report to the court, she recommended that Mark be granted sole custody of Ryan and that Deborah have supervised visitation until her treating mental health professional determined it was no longer necessary. She stated that Deborah "has many unresolved problems in her history and she consistently blames others for her experiences and her actions." She also stated that Deborah "uses manipulation, intimidation and threats in her attempt to control her environment," and "has expressed her anger and hostility in a frightening, vicious and vindictive manner." The District Court adopted the custody arrangement recommended by the social worker in its findings and conclusions entered August 7, 1990.

In an order entered October 16, 1990, the District Court named the supervisor for Deborah's visitation with her son and set the visitation schedule at 10:00 a.m. to 1:00 p.m. on Tuesday, Thursday and Saturday. On December 18, 1990, the District Court denied Deborah's motion for new trial and other relief.

Did the District Court err in its custody determination?

Initially, we note that this Court's standard of review of the

findings of fact in a child custody determination is whether the trial court has abused its discretion. In re Marriage of Obergfell (1985) 218 Mont. 83, 87, 708 P.2d 561, 563. This Court will not substitute its judgment for that of the district court where the evidence conflicts, but rather will limit itself to determining whether there is substantial credible evidence in the record to support the district court's findings. Obergfell, 708 P.2d at 563.

Deborah argues that the District Court erred in failing to set forth the reasons it did not award joint custody. Section 40-4-224(1), MCA, requires that

[u]pon application of either parent or both parents for joint custody, the court shall presume joint custody is in the best interest of a minor child unless the court finds, under the factors set forth in 40-4-212, that joint custody is not in the best interest of the minor child.

Deborah points out that she requested joint custody.

The court found, at finding # 16, that "it is in Ryan's best interest that [Mark] be awarded sole custody and [Deborah] receive visitation." We conclude that, in combination with the court's other findings, finding # 16 meets the requirements of § 40-4-224(1), MCA.

Deborah states that the District Court failed to make a finding as to the mental health of the parties. This assertion is incorrect. The District Court found that Deborah "has seen a variety of mental health care professionals during the course of the marriage," and that, although their diagnoses differ, some concluding that she suffers a mixed personality disorder, others

4

that she suffers from a bipolar affective disorder, all agree that she is in need of further treatment. The court also found that Mark has previously been treated by mental health care professionals, has received in-patient treatment for alcohol abuse, and was in counseling at the time of trial.

Deborah also asserts that the District Court erred in failing to have a full custodial investigation. The court-appointed social worker testified that the report was "the best that I can do." In her report, she stated that she was not able to do an actual custody investigation because "Instead of interviewing the mother, Deborah, I was only in contact with her at her direction." She testified that, in making her report, she referred to written records including court files, police records, written reports from mental health records, and medical reports. She interviewed Mark, Deborah, and Deborah's father. She further testified that the previous fall she had prepared a report concerning custody of Deborah's daughter. She noted the confusion as to Deborah's diagnosis. As the incompleteness in the investigation seems to result primarily from Deborah's uncertain diagnosis and her unavailability to meet with the social worker, we conclude that no reversible error has been shown as to this aspect.

Deborah argues that the court should have relied more on the testimony of her psychologist and psychiatrist. Those witnesses testified that they believed Ryan would be safe with Deborah. However, as Mark points out, none of Deborah's witnesses went so

5

far as to say that it would be in Ryan's best interest to be placed in Deborah's custody. We conclude that no error has been shown.

Deborah contends that the District Court should not have relied so heavily on the opinions of the court-appointed social worker and of counselor Swaggerty, both of whom recommended that Mark be granted custody of Ryan and that Deborah be granted only supervised visitation. Nothing in the record indicates that the court failed to exercise its own independent judgment after listening to all of the evidence. However, even heavy reliance on expert testimony does not necessarily constitute abuse of a district court's discretion. In re Marriage of Ereth (1988), 232 Mont. 492, 494, 757 P.2d 1312, 1313-14.

Deborah argues that she should have been awarded primary physical custody of Ryan because of a presumption that primary custody should be awarded to a nursing mother. We are unaware of such a presumption, and, even if such a presumption were recognized in Montana, it could be outweighed by other circumstances.

Deborah also cites § 40-4-217(1), MCA, which provides that

[a] parent not granted custody of the child is entitled to reasonable visitation rights unless the court finds, after a hearing, that visitation would endanger seriously the child's physical, mental, moral, or emotional health.

She argues that limiting her to supervised visitation is improper because there was no finding that visitation would seriously endanger Ryan's physical, mental, moral, or emotional health.

The statute does not state that "reasonable visitation," with

6

no further qualifiers, will be awarded if none of the listed findings are made. Under the statute, some visitation will be allowed unless one of the listed findings is made. Deborah has been granted some visitation. We conclude than no violation of § 40-4-217(1), MCA, has been shown.

Deborah points out that the record shows that when she had her son, she provided him with good, loving care. While she is correct, two expert witnesses recommended that she be granted only supervised visitation until her mental problems are treated.

At finding # 10, the District Court stated that

Similarly, [Deborah] has only supervised visitation with a child by a previous marriage, pursuant to an Order issued by a State Court in Hawaii on April 2, 1990. Furthermore, the father of that child has obtained sole custody.

Deborah argues that this finding constitutes error because custodial and visitation arrangements for a party's previous children are not factors to be considered under § 40-4-212, MCA, in determining best interest of the child.

Mark introduced into evidence a copy of the stipulation by which Deborah agreed that her former husband would have custody of her daughter. That stipulation provided that Deborah's visitation would be limited to one hour of supervised visitation once a week, to be preceded by two months of therapy for the daughter so that her "fears and anxiety concerning [the] visitation" could be minimized. The stipulation further required Deborah to supply her daughter's therapist with "a complete copy of her present psychia-

7

tric/psychological records, files and reports for the purpose of assisting said psychologist/therapist in reaching his or her recommendation." We conclude that this matter relates to Deborah's mental health, a factor listed under § 40-4-212, MCA, in determining best interests of the child, and was thus properly considered.

Deborah argues that the District Court abused its discretion in limiting Ryan's time with her to nine hours a week. We disagree. The proposals for supervised visitation which were before the District Court were Mark's, which was adopted, and Deborah's, which was that she be granted visitation from 7 a.m. until 7 p.m. each weekday and for six hours a day on weekends. Mark also submitted an affidavit that Deborah's proposed schedule would be a hardship requiring him to get Ryan up early simply to take him to Deborah's, that Deborah was continuing to harass him by phone and in person, and that Deborah had changed the supervising person and the time of visitation on several occasions in the interim since the trial. We conclude that the court did not abuse its discretion in adopting Mark's proposed schedule.

Deborah asserts that counselor Swaggerty misrepresented his educational background in court. He testified that his educational "background is from U.C.L.A. and the Graduate School of Psychology in the University of California, Los Angeles." In her motion for new trial, Deborah submitted an affidavit of the Dean of Administration of Rosemead School of Psychology at Biola University in La Mirada, California. The dean stated that Swaggerty received

8

his Ph.D. from Rosemead in 1978.  Swaggerty did receive a B.A. in psychology from U.C.L.A.

No prejudice has been shown from the apparent error in Swaggerty's statement at trial concerning his alma mater.  It does not appear critical to his testimony which university granted his advanced degree.  We conclude that the District Court did not err in denying the motion for new trial on this basis.

Affirmed.

_____
Chief Justice

We concur:

_____

_____

_____

_____
Justices

9

August 27, 1991

CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

Joan Meyer Nye
NYE & MEYER, P.C.
3317 Third Ave. North
Billings, MT 59101

Christopher P. Thimsen
Attorney at Law
2812 1st Avenue North, Suite 210
Billings, MT 59101

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
Deputy