No. 96-096

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

IN RE THE MARRIAGE OF

KEVIN W. JAMES,

     Petitioner and Appellant,

  v.

RHONDA RENEE JAMES,

     Respondent and Respondent.

FILED

OCT 08 1996

CLERK OF SUPREME
STATE OF SUPREME COURT

APPEAL FROM: District Court of the Eleventh Judicial District,
In and for the County of Flathead,
The Honorable ~~Ted O. Lympus,~~ *Katherine Curtis* Judge presiding.

COUNSEL OF RECORD:

     For Appellant:

     H. James Oleson, Oleson Law Firm, Kalispell, Montana

     For Respondent:

     George B. Best, Kalispell, Montana

Submitted on Briefs: July 18, 1996

Decided: October 8, 1996

Filed:

_____
Clerk

Justice William E. Hunt, Sr. delivered the Opinion of the Court.

Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1988 Internal Operating Rules, this decision shall not be cited as precedent and shall be published by its filing as a public document with the Clerk of the Supreme Court and by a report of its result to Montana Law Week, State Reporter and West Publishing Company.

Kevin James appeals the order issued pursuant to a divorce decree by the Eleventh Judicial District Court, Flathead County, awarding Rhonda James primary residential custody of the James' son, Joel. We affirm.

The sole issue for our review is whether the District Court erred in awarding Rhonda primary residential custody of Joel.

## FACTS

Kevin James (Kevin) and Rhonda James (Rhonda) were married in Kalispell, Montana on January 25, 1992. Kevin, 25 years old, is employed as a logger in a family owned business. Rhonda is 24 years old and attended but did not complete college. During the course of the marriage Rhonda was a homemaker and was not employed outside the home. At the time of the marriage Rhonda had a son, Bradley, from a previous relationship. Kevin and Rhonda conceived a child, Joel, born June 9, 1993.

On August 16, 1994, Kevin filed a petition for dissolution of marriage in the Eleventh Judicial District Court, Flathead County. On the same date Kevin filed an affidavit which alleged that because of Rhonda's drinking habits and occasional neglect of Joel, it would be in Joel's best interests if the court placed him in

2

Kevin's custody. In her response to Kevin's petition, Rhonda denied that Kevin should be granted residential custody of Joel.

In October of 1994, the court ordered that Jolie Fish, Director of Family Court Services, conduct an investigation and prepare a report and recommendation regarding custody, support and visitation rights of Joel, Kevin, and Rhonda. Ms. Fish's report, filed January 27, 1995, recommended that Kevin and Rhonda be granted joint custody of Joel, but that Kevin be awarded residential custody of Joel. Ms. Fish's report was based on conferences and home visits with both Kevin and Rhonda, during which Ms. Fish studied their parenting abilities and their respective interactions with Joel.

In her report, Ms. Fish initially stated Kevin's allegation of Rhonda's excessive drinking and Rhonda's allegation that Kevin was abusive towards her. Ms. Fish admitted later in the report that she questioned Rhonda's credibility with respect to her abuse allegations, and was not entirely satisfied with Rhonda's explanation of her drinking habits.

Ms. Fish believed that both Kevin and Rhonda loved Joel very much, and that Joel exhibited a bond or attachment to each parent. Ms. Fish discovered during a visit to Kevin's home that he and Joel were affectionate toward one another, and that Kevin responded appropriately when it was necessary to discipline Joel. Ms. Fish noted that Kevin had lived in the Kalispell area his whole life, worked in a local family business, and had just bought a house where he intended to stay indefinitely.

3

In contrast, when Ms. Fish visited Rhonda's apartment, she found her in the midst of entertaining a number of friends. Joel was involved in playing with his toys and Rhonda, her attention distracted by her visitors, did not interact much with Joel.

Ms. Fish concluded her report by stating that because of Rhonda's "immaturity," Ms. Fish did not believe that Rhonda "possesses the ability to foster an environment that will meet Joel's physical, social, educational, emotional, or psychological needs." Ms. Fish recommended that Kevin be given residential custody of Joel, and that "every effort should be made to ensure Joel has significant contact with his brother, Bradley," for whom Joel had exhibited a great fondness.

The matter came before the court for a hearing on May 3, 1995. Each side presented witness testimony, and Ms. Fish testified in accordance with the report she filed with the court. The court issued its Findings of Fact, Conclusions of Law and Decree of Dissolution on October 18, 1995, which dissolved the marriage, distributed the marital property, and awarded Rhonda primary residential custody of Joel. Kevin appeals the District Court's award of custody.

## STANDARD OF REVIEW

In reviewing a district court's award of custody, we must determine whether the court's findings are clearly erroneous. In re the Marriage of Dreesbach (1994), 265 Mont. 216, 220-21, 875 P.2d 1018, 1021. The findings of fact must be based on substantial, credible evidence, and the court's decision will be

4

upheld unless a clear abuse of discretion is shown. Dreesbach, 875 P.2d at 1021.

## DISCUSSION

Did the District Court err in awarding Rhonda primary residential custody of Joel?

Kevin argues on appeal that there are two reasons why the District Court's custody award was erroneous: first, the court ignored the recommendations of Ms. Fish, an expert who was hired by the court and was unbiased; second, the court based its custody award in part on its desire to support the continued interaction between Joel and Bradley, when in fact the court had destroyed the likelihood of such interaction as a result of its ruling in a prior, companion case.

While Kevin admits in his briefs submitted to us that there are no cases in which we have held that a district court must follow the recommendations of a court-appointed expert, he argues strenuously nonetheless that in this case the District Court erroneously ignored Ms. Fish's recommendations. Kevin points us to three cases in which we upheld a district court's award of custody in accordance with the recommendation of a court-appointed expert: Dreesbach, 875 P.2d 1018; In re the Marriage of Cook (1991), 250 Mont. 210, 819 P.2d 180; and In re the Marriage of Ereth (1988), 232 Mont. 492, 757 P.2d 1312. Our holdings in these cases do not imply, as Kevin seems to argue, that a district court's custody award must be in accordance with a court-appointed expert's recommendations in order to withstand review by this Court. The

5

only direction we have given district courts regarding a court appointed expert's recommendations is that they merely consider the recommendations in making a custody determination. In re the Marriage of Moseman (1992), 253 Mont. 28, 30-31, 830 P.2d 1304, 1306.

For purposes of our review of custody cases, a district court's willingness or unwillingness to adhere to a court-appointed expert's recommendations is merely incidental to its primary duties of considering the "best interests of the child" factors and awarding custody based on substantial, credible evidence. In other words, as long as a custody award is in the best interest of the child and is supported by substantial, credible evidence, we will as readily affirm an awarding judge who relied on an expert's report as an awarding judge who did not rely on an expert's report. This is especially so in light of the principle which supports our unwavering deference to a district court's custody determination:

> The responsibility of deciding custody is a delicate one which is lodged with the district court. The judge hearing oral testimony in such a controversy has a superior advantage in determining the same, and his decision ought not to be disturbed except on a clear showing of abuse of discretion.

In re the Marriage of Nalivka (1986), 222 Mont. 84, 89, 720 P.2d 683, 686 (citations omitted).

The District Court in this case properly considered the "best interest" factors before awarding custody. The "best interest" factors of course refer to § 40-4-212, MCA, which provides in pertinent part:

6

(1) The court shall determine custody in accordance with the best interest of the child. The court shall consider all relevant factors, including but not limited to:

 (a) the wishes of the child's parent or parents as to custody;

 (b) the wishes of the child as to a custodian;

 (c) the interaction and interrelationship of the child with the child's parent or parents and siblings and with any other person who may significantly affect the child's best interest;

 (d) the child's adjustment to home, school, and community;

 (e) the mental and physical health of all individuals involved;

 (f) physical abuse or threat of physical abuse by one parent against the other parent or the child; and

 (g) chemical dependency, as defined in 53-24-103, or chemical abuse on the part of either parent.

Section 40-4-212(1), MCA. The District Court made findings concerning Joel's best interests before awarding Rhonda custody. In its Findings of Fact, Conclusions of Law and Decree of Dissolution, the court states at Finding #15:

15. The provisions set forth in Section 40-4-212, M.C.A., were considered by the Court. The child, Joel, is too young to express his wishes as to his custodian, and each of the parents believes he/she should be designated the primary residential parent for Joel. There was no evidence that Joel was not adjusted to his home with Rhonda, even though there was a concern about the number of moves Rhonda had made in the recent past. The Court also considers the interaction and interrelationship between Joel and his half-brother, Bradley, and finds that it is in Joel's best interest to fashion a custodial arrangement that will facilitate the continuation of that relationship.

At Finding #7 the court states:

7. Joel has continuously resided with Respondent [Rhonda] since the parties' separation in August 1994. Joel is closely bonded with his mother.

At Findings 9, 10, and 11, the court states:

7

9.   Rhonda testified that she has been physically and emotionally abused by Kevin, which he denied.

10.   Janet Cahill, Director of the Violence Free Crisis Center in Kalispell, Montana, testified at the hearing concerning her contacts with Rhonda in July and August 1994.   She testified that she interviewed Rhonda, who exhibited many of the signs of a physically abused person.   At the time of the hearing, Rhonda had been counseling with Mary Jane Fox through the Violence Free Crisis Center.

11.   The Court, having had the opportunity to observe the demeanor of the witnesses and consider all the testimony presented at the hearing, finds credible Rhonda's testimony on the issue of physical abuse.

The court also adhered to the applicable rebuttable presumptions that

> custody should be granted to the parent who has provided most of the primary care during the child's life, which the evidence shows is Rhonda, and the presumption that the failure of Kevin to pay child support that he was able to pay was contrary to Joel's best interest.

See § 40-4-212(3)-(4), MCA.   Kevin argues that he, not Rhonda, provided most of Joel's primary care.   A review of the record reveals conflicting testimony on this point, and a court may properly give more weight to one party's evidence than to the other party's evidence.   In re the Marriage of Rolfe (1985), 216 Mont. 39, 699 P.2d 79.   It was not error for the court to find that Rhonda provided Joel's primary care, and to apply the above presumption to that finding.

Kevin also contends that the court failed to address § 40-4-212(1)(e), MCA, one of the "best interest" factors which requires a court to consider "the mental and physical health of all individuals involved," and § 40-4-212(1)(g), MCA, which requires a

8

court to consider "chemical dependency, as defined in 53-24-103, or chemical abuse on the part of either parent." Kevin's contention is based on the court's failure to make specific findings as to these "best interest" factors.

In In re the Marriage of Clingingsmith (1992), 254 Mont. 399, 838 P.2d 417, we explained the extent of a district court's duty to make findings concerning the "best interest" factors:

> While it is encouraged, the trial court need not make specific findings on each of the factors. However, failure to at least consider all of the statutorily mandated factors is error. The custody determination must be based on substantial evidence relating to the statutory factors and must be set forth explicitly in the findings. The findings should, at a minimum, set forth the 'essential and determining facts upon which the District Court rested its conclusion on the custody issue.'

Clingingsmith, 838 P.2d at 421 (citations omitted). As to Kevin's contention that the court did not address § 40-4-212(1)(e), MCA, we conclude to the contrary. The court, in its Findings, noted that both Kevin and Rhonda were in good health, and that Ms. Fish was concerned about Rhonda's instability and immaturity. The court "at least considered" this factor.

We have also stated that a district court need not make a finding concerning a "best interest" factor which is not at issue or for which there is no evidentiary support in the record. In re the Marriage of Otto (1990), 245 Mont. 271, 275, 800 P.2d 706, 709. While Kevin alleged in his affidavit submitted with his petition for dissolution that Rhonda has an alcohol abuse problem, the record reveals that he did not pursue this matter at trial. Rhonda

9

and one other witness were simply asked whether Rhonda ever drank alcohol while she was married to Kevin. The answers are not as important as the questions that were asked, which could only have elicited the fact that Rhonda may have drunk alcohol, not that she had an alcohol abuse problem. While we have stated our preference for district courts to make findings concerning all the "best interest" factors, it is understandable that the court here did not address § 40-4-212(1)(g), MCA, for there is nothing in the record of the proceedings which would prompt it to do so.

From our review of the record it is clear that the court carefully and conscientiously considered Joel's best interests before awarding custody. It is equally clear to us that the court's findings in this regard were based on substantial credible evidence. That the court's findings conflict with some of the recommendations in Ms. Fish's report or with some of the evidence Kevin presented at trial does not constitute error or abuse of discretion. A trial court is given wide latitude in these matters, and is not bound by any testimony, expert or otherwise. The District Court considered Ms. Fish's report and her testimony at trial, and ultimately decided not to rely on her recommendations:

> 13. Extensive testimony was presented concerning the best interests of the minor child and the proper residential parent. Jolie Fish, Director of Family Court Services, testified pursuant to her report of January 1995. She testified that at the time of her report she had not received information concerning Kevin's physical abuse of Rhonda, and that she had significant concerns in that regard. Ms. Fish testified that Rhonda exhibited symptoms of an abused person, but she also expressed concerns about Rhonda's instability and lack of maturity. She acknowledged that removing Joel from Rhonda's care would be traumatic to him, but did not change her

10

recommendation that Kevin be designated the primary residential parent for Joel.

We disagree with Kevin's first argument. The court adequately considered the best interest factors and based its conclusions on substantial, credible evidence. The court's findings set forth the "essential and determining facts upon which [it] rested its conclusions on the custody issue." The court did not abuse its discretion.

As to Kevin's second argument, he contends that the court erred in partly basing its custody award on the court's desire to foster the relationship between Joel and Bradley, a relationship already compromised by the court's ruling in a prior, companion case. The essence of Kevin's second argument is that the court based its custody award on a mistaken premise, that Joel and Bradley had a relationship that could be maintained; Kevin does not argue that it was improper for the court to consider maintaining or fostering one of Joel's relationships.

Kevin cites the District Court's Findings of Fact, Conclusions of Law and Temporary Order issued September 8, 1995 in the case of Ogle v. James, Cause No. DR-93-046(B) (Eleventh Judicial District Court, Flathead County), where the court ordered that Justin Ogle, Bradley's natural father, be awarded primary residential custody and that Rhonda be awarded visitation rights. Kevin argues that since Rhonda no longer has physical custody of Bradley, awarding her custody of Joel would not and could not foster any relationship between the two young boys. Kevin argues that the court's order in

11

Ogle v. James "destroyed" the relationship between Bradley and Joel. We disagree.

The record reveals that the court, in awarding Rhonda custody of Joel, in part to foster Joel's relationship with Bradley, was well aware of the contents of its order in the Ogle v. James case. Kevin raised this same argument before us now in his Motion for a New Trial filed with the District Court, and in its Order on Motion for a New Trial and Rationale the court responded:

> With regard to paragraph (5) of the Motion, the Court was aware that Bradley no longer primarily resides with [Rhonda], but intended that Bradley and Joel could maintain their relationship during periods that Bradley was in [Rhonda's] care.

Bradley and Joel's relationship was not destroyed, and is in fact maintained by the grant to Rhonda of residential custody of Joel combined with her visitation rights to Bradley. We conclude that it was proper for the court to fashion the custody arrangement as it did, especially when we consider that Kevin does not have any visitation rights to Bradley.

We hold that the District Court did not abuse its discretion in awarding Rhonda primary residential custody of Joel.

Affirmed.

William E. Hunt Sr.
Justice

We Concur:

Karla M. Gray

W. William Leaphart

Justices

October 8, 1996

## CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

H. James Oleson
Oleson Law Firm
P.O. Box 2036
Kalispell, MT 59903-2036


George B. Best
Attorney at Law
35 8th Street East
Kalispell, MT 59901

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _A. Gallagher_
Deputy